Michael R. Reese (State Bar Number 206773)
*mreese@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Melissa S. Weiner (*pro hac vice* to be filed)
*weiner@halunenlaw.com*
Christopher J. Moreland (*pro have vice* to be filed)
*moreland@halunenlaw.com*
**HALUNEN LAW**
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*Counsel for Plaintiff
and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| THERESA FORSHER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOAR'S HEAD PROVISIONS CO., INC.<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**CLASS ACTION** |

Plaintiff Theresa Forsher ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), by and through her undersigned counsel, brings this Class Action Complaint against Defendant Boar's Head Provisions Co., Inc. ("Boar's Head") and respectfully alleges as follows. Plaintiff bases the allegations herein on personal knowledge as to matters related to, and known to, Plaintiff. As to all other matters, Plaintiff bases the allegations herein on information and belief, through investigation of Plaintiff's counsel. Plaintiff believes substantial evidentiary support exists for the allegations set forth herein, and seeks a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      On behalf of herself and the Class members, Plaintiff alleges that during the "Class Period" Defendant Boar's Head deceptively and misleadingly marketed, and continues to deceptively and misleadingly market, certain of its cheese products (identified below and hereinafter referred to collectively as the "Products")[1] as "natural," when, in fact, the Products contain ingredients derived from using unnaturally genetically modified organisms ("GMOs").[2]

2.      Defendant deceptively and misleadingly labels the Products, including the following, as "natural":

- Boar's Head Pecorino Romano (Ex.1);

- Boar's Head French Gruyere (Ex. 2);

- Boar's Head Picante Sharp Provolone (Ex. 3);

---

[1] Defendant may discontinue offering some cheese products and regularly introduces other cheese products that are also falsely and misleadingly mislabeled "natural." Defendant may also market and sell additional substantially similar cheese products of which Plaintiff is unaware. Plaintiff will ascertain the identity of these additional products through discovery.

[2] As used herein, "genetically modified" refers to the use of molecular biology techniques, such as recombinant DNA techniques, to delete genes or to transfer genes for particular qualities from one species to another. In contrast to conventional breeding techniques, modern molecular biology techniques permit the insertion into an organism of genetic material from an unrelated species, such as the DNA of a fish into a tomato. *See* Ed Wallis, *Fish Genes into Tomatoes: How the World Regulates Genetically Modified Foods*, 80 N.D. L. Rev. 421 (2004).

CLASS ACTION COMPLAINT

1

- Boar's Head Fontina (Ex. 4);

2

- Boar's Head Fromaggio Piave (Ex. 5);

3

- Boar's Head Gouda (Ex. 6);

4

- Boar's Head French Brie (Ex. 7);

5

- Boar's Head Creamy Blue (Ex. 8);

6

- Boar's Head Appendaam Swiss Cheese (Ex. 9);

7

- Boar's Head Edam (Ex. 10);

8

- Boar's Head Gruyere (Ex. 11);

9

- Boar's Head Baby Swiss (Ex. 12);

10

- Boar's Head Lacey Swiss (Ex. 13);

11

- Boar's Head Aged Gouda (Ex. 14);

12

- Boar's Head Whole Milk Mozzarella (Ex. 15);

13

- Boar's Head Asiago (Ex. 16);

14

- Boar's Head Butterkase (Ex. 17);

15

- Boar's Head Double Gloucester (Ex. 18);

16

- Boar's Head Cream Havarti (Ex. 19);

17

- Boar's Head Horseradish Cheddar (Ex. 20).

18    3.    Throughout the Class Period in the United States Defendant has systematically

19  marketed and advertised the Products as "natural" on each package of the Products, such that any

20  reasonable consumer who has purchased the Products, or who will purchase them in the future, is

21  exposed to Defendant's "natural" claim.

22    4.    Defendant's claims that the Products are "natural" are deceptive and misleading

23  because the Products are not, in fact, "natural."

24    5.    Indeed, each of the Products' ingredients are derived from GMOs,[3] which are not

25

26

27  [3] Upon information and belief, the only Boar's Head product that does not contain GMOs is Boar's
     Head Brand Hummus, which, per Defendant's website "use only non-GMO ingredients and are Non-
28  GMO Project Verified." *See* http://boarshead.com/about/faq (last visited December 28, 2016).

CLASS ACTION COMPLAINT

1    natural and which consumers do not expect to be present in foods labeled "natural."

2         6.    Furthermore, reasonable consumers do not believe there are any differences between

3    foods that are labeled "natural" and those that are labeled "organic." Reasonable consumers believe

4    that "organic" foods do not contain GMOs, and that foods labeled "natural" are likewise free of such

5    substances.

6         7.    Accordingly, Defendant misleads, deceives and confuses reasonable consumers,

7    including Plaintiff and the Class Members, by representing to them that the Products are in fact

8    "natural".

9         8.    Defendant's conduct harms consumers, including Plaintiff and the Class members, by

10   inducing them to purchase and pay a premium price for its Products based on the false premise that

11   they are "natural" when consumers would not have otherwise purchased or paid a premium price for

12   the Products.

13                                        **PARTIES**

14   **Plaintiff Theresa Forsher**

15        9.    Plaintiff Theresa Forsher is a resident of San Rafael, Marin County, California.

16        10.   Plaintiff purchased the Products for personal consumption at various retail outlets

17   located within this District.

18        11.   The packaging of the Products Plaintiff purchased included the representation that

19   said Products were "natural," Plaintiff believed Defendant's representation that the Products were

20   "natural," and she relied upon that representation in making her decision to purchase the Products.

21        12.   Plaintiff would not have purchased the products has she known they were not, in fact,

22   "natural" because they were derived from GMOs.

23        13.   Plaintiff purchased and paid a premium price for "natural" products, but she received

24   products that were not "natural." Accordingly, the Products Plaintiff received were worth less than

25   the Products for which she paid.

26        14.   Had Defendant not made false, misleading, and/or deceptive representations that the

27   Products were "natural," Plaintiff would not have been willing to pay a premium price for said

28   Products and, consequently, would not have purchased them.

CLASS ACTION COMPLAINT

15.     Plaintiff was injured and lost money as a result of Defendant's deception, misrepresentations, omissions, and unlawful conduct.

16.     If Plaintiff knew the Product labels were truthful and non-misleading, she would continue to purchase the Products in the future. At present, however, Plaintiff cannot purchase the Products because she cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading.

**Defendant Boar's Head**

17.     Defendant is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Florida.

18.     Defendant produces and distributes meats, cheeses, and condiments, including the Products identified herein, to delicatessens, gourmet stores, and supermarkets throughout the United States.

19.     The labeling for the Products that Plaintiff relied upon in making her decision to purchase the Products was conceived, designed, prepared and/or approved by Defendant and was disseminated by Defendant and its agents through labeling, marketing and advertising containing the misrepresentations alleged herein.

20.     Defendant's labeling, marketing and advertising for the Products was designed to encourage consumers to purchase the Products, and it materially misled reasonable consumers, including Plaintiff and the Class members.

21.     Upon information and belief, in committing the wrongful acts alleged herein, Defendant, in connection with its subsidiaries, affiliates, and/or other related entities and their employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations, and Defendant participated in the making of such representations in that it disseminated those misrepresentations or caused them to be disseminated.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

### Jurisdiction

22.     This Court has personal jurisdiction over Defendant for reasons including but not limited to the following: Plaintiff's claims against Defendant Boar's Head arise out of its conduct within the State of California, including its dissemination within the State of California the false and misleading representations that the Products are "natural" when, in fact, they are not.

23.     This Court has original subject matter jurisdiction over this putative class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat 4 (codified in various sections of Title 28 of the United State Code); specifically 28 U.S.C. § 1332(d)(2)(A), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."

24.     Because Plaintiff is a citizen of the State of California and Defendant is a citizen of Delaware and Florida, at least one member of the plaintiff class is "a citizen of a State different from any defendant" in this litigation. Additionally, Plaintiff alleges that the matter in controversy is well in excess of $5,000,000 (in the aggregate and exclusive of interest and costs). Finally, Plaintiff alleges that "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B)

### Venue

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District, including Plaintiff's purchases of the Products in reliance on Defendant's dissemination of false and misleading information about the nature, quality, and/or ingredients of the Products.

26.     Assignment to the San Francisco Division is appropriate under Civil L.R. 3-2(c) and (e) because a substantial part of the events or omissions that give rise to Plaintiff's claims occurred within the County of Marin.

CLASS ACTION COMPLAINT

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### Defendant Advertises and Markets the Products as "Natural"

27.    Recent consumer surveys have revealed that "nearly seven in ten consumers were 'very' or 'somewhat' interested in natural products," and that "'natural ingredients' ranked second only to taste in influencing consumer purchasing behavior."[4]

28.    This desire has translated into financial gain for those who manufacture and sell natural products, as each year consumers spend billions of dollars on such products. Indeed, in 2010, consumers in the United States purchased $39 billion worth of natural/organic food products, up from $33.7 billion in 2009.[5]

29.    Defendant, like many food manufacturers, recognizes this growing consumer desire for natural food products and, to capitalize on consumers' rising demand for natural food, Defendant labels and markets the Products as "natural", thereby setting the Products apart from other competing cheese products.

30.    Throughout the Class Period, Defendant systematically marketed and advertised the Products as "natural" on the Product packaging.

31.    Defendant prominently placed the words "natural" in a central location on the labeling of every package of the Products. (*See* Exs. attached hereto)

32.    By consistently and systematically marketing and advertising the Products as "natural" on the Products' packaging throughout the United States, Defendant ensured that all consumers purchasing the Products were, and all consumers purchasing the Products in the future will be, exposed to its misrepresentation that the Products are "natural."

---

[4] Bruce Horovitz, Frito-Lay turns to nature's path, USA TODAY, Dec. 28, 2010, *available at* http://www.usatoday.com/printedition/news/20101228/fritonatural28_st.art.htm.

[5] Natural Products Association,
http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociation.aspx?hkey=8d3a15ab-f44f-4473-aa6e-ba27ccebcbb8.

CLASS ACTION COMPLAINT

**GMOs Are Not Natural**

33.     GMOs are organisms in which the genetic material (i.e. DNA) has been altered such that the organism exhibits traits that would not occur in nature. Generally speaking, GMOs are "[p]lants or animals that have had their genetic makeup altered to exhibit traits that are not naturally theirs."[6] For example, "by transferring specific genetic material from a bacterium to a plant, scientists can create plants that can produce pesticidal proteins or other chemicals that the plaint could not previously produce. Using this technology, scientists have modified corn, cotton, and potatoes to produce a pesticidal protein that is toxic when ingested by specific insect pests."[7]

34.     Monsanto, the world's dominant producer of genetically modified seeds, defines GMOs as "[p]lants or animals that have had their genetic makeup altered to exhibit traits that are not naturally theirs. In general, genes are taken (copied) from one organism that shows a desired trait and transferred into to the genetic code of another living organism."[8]

35.     Romer Labs, a company that provides diagnostic solutions to the agricultural industry, describes GMOs as follows: "Agriculturally important plants are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to express novel traits that normally would not appear in nature, such as herbicide or insect resistance. Seed harvested from GMO plants will also contain these modifications."[9]

36.     The unnatural nature of GMOs is further evidenced by the fact that health and environmental organizations, such as the World Health Organization, define GMOs as "organisms in

---

[6] Monsanto | Glossary, http://www.monsanto.com/newsviews/Pages/glossary.aspx#g (last visited Oct. 7, 2016).

[7] EPA's Regulation of Biotechnology for Use in Pest Management | Pesticides | US EPA, https://www.epa.gov/regulation-biotechnology-under-tsca-and-fifra/epas-regulation-biotechnology-use-pest-management (last accessed Oct. 7, 2016).

[8] Monsanto | Glossary, http://www.monsanto.com/newsviews/Pages/glossary.aspx#g (last visited Oct. 10, 2016).

[9] Romer Labs, Making the World's Food Safer – GMO. Available at http://www.romerlabs.com/en/knowledge/gmo/ (last visited May 19, 2015).

CLASS ACTION COMPLAINT

which the genetic material (DNA) has been altered in a way that does not occur naturally."[10]

37.    The United States Environmental Protection Agency has distinguished conventional breeding of plants from genetic engineering using modern scientific techniques, as follows:

> **4.     What is the difference between plant-incorporated protectants produced through genetic engineering and those produced through conventional breeding?**
>
> **Conventional breeding** is a method in which genes for pesticidal traits are introduced into a plant through natural methods, such as cross-pollination. For a plant-incorporated pesticide, one would breed a plant that produces a pesticide with a sexually compatible plant that does not possess this property but possesses other properties of interest to the breeder, *e.g.*, sweeter fruit. Then, out of the offspring, the breeder would choose the offspring plant that produces the pesticide, and therefore expresses the desired pesticidal trait, as well as producing sweeter fruit.
>
> **Genetically engineered** plant-incorporated protectants are created through a process that utilizes several different modern scientific techniques to introduce a specific pesticide-producing gene into a plant's DNA genetic material. For example, a desired gene that produces a desired pesticide (*e.g.*, the insecticidal protein *Bt* from the bacterium, *Bacillus thuringiensis*) can be isolated from another organism, such as a bacterium, and then inserted into a plant. The desired gene becomes part of the plant's DNA. The plant then expresses the incorporated gene and produces the pesticidal protein as it would one of its own components.[11]

38.  As Consumers Union explained:

> Genetic engineering is not just an extension of conventional breeding. In fact, it differs profoundly. As a general rule, conventional breeding develops new plant varieties by the process of *selection*, and seeks to achieve expression of genetic material which is already present

---

[10] The World Health Organization, 20 Questions on Genetically Modified (GM) Foods. Available at http://www.who.int/foodsaftey/publications/biotech/en/20questions_en.pdf

[11] Office of Prevention, Pesticides, and Toxic Substances, United States Environmental Protection Agency, Questions & Answers, Biotechnology: Final Plant-Pesticide/Plaint Incorporated Protectants (PIPs) Rules 3 (2001), *available at* http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf (bold in original).

CLASS ACTION COMPLAINT

within a species. . . Conventional breeding employs processes that occur in nature, such as sexual and asexual reproduction. . .

Genetic engineering works primarily through *insertion* of genetic material, although gene insertion must also be followed up by selection. This insertion process does not occur in nature.[12]

39.     Genetic engineering is not merely an extension of conventional breeding, which "develops new plant varieties by the process of selection, and seeks to achieve expression of genetic material which is already present within a species."[13] Instead, "[g]enetic engineering works primarily through insertion of genetic material," which "insertion process does not occur in nature."[14]

40.     As indicated by the definitions and descriptions above, which come from a variety of industry, government, and health organizations, GMOs are not "natural" and cannot be accurately described as such because they do not naturally occur. Instead, GMOs are artificially created in a laboratory through genetic engineering.

**Defendant's Products Contain Ingredients Derived From GMOs**

41.     Defendant's claim that the Products are "natural", as prominently displayed on the Products' packaging and/or labeling is false, misleading, and likely to deceive reasonable consumers like Plaintiff and the Class members because the Products are not "natural", due to the presence of GMOs.

42.     The USDA does not allow animal products to be certified as "organic" if the animals

---

[12] Michael K. Hansen, Consumer Policy Institute / Consumers Union, Genetic Engineering Is Not an Extension of Conventional Plant Breeding; How genetic engineering differs from conventional breeding, hybridization, wide crosses and horizontal gene transfer 1 (2000), *available at* http://consumersunion.org/wp-content/uploads/2013/02/Wide-Crosses.pdf (emphasis in original).

[13] Michael K. Hansen, Consumer Policy Institute / Consumers Union, Genetic Engineering is Not an Extension of Conventional Plant Breeding; How genetic engineering differs from conventional breeding, hybridization, wide crosses and horizontal gene transfer 1 (2000). Available at http://consumersunion.org/wp-content/uploads/2013/02/Wide-Crosses.pdf.

[14] *Id.*

CLASS ACTION COMPLAINT

1   consume GMO feed.[15] In the context of dairy production, the UDSA has explained that when a dairy

2   cow grazes in a particular field, "the milk from that dairy cow is analogous to the crops harvested

3   from the same field[.]"[16] The USDA made clear that if a cow consumes GMO grass, the milk the

4   cow produces is not organic.[17] The USDA has further recognized that the characteristics of an

5   animal's feed (e.g., whether such feed is GMO) will affect the characteristics of the end products.

6       43.     As of 2012, approximately 88% of the corn planted in the United States was grown

7   from genetically modified seed, while 93% of the soy planted in the United States was grown from

8   genetically modified seed.[18]

9   **Reasonable Consumers Do Not Believe Products That Contain GMOs or Ingredients**

10  **Derived From Animals That Are Given rbST Are Natural**

11      44.     A 2015 nationally-representative survey by Consumer Reports National Research

12  Center found that "[a] range of environmental, safety and social responsibility objectives are *key*

13  (*very important* or *important*) to most US consumers when purchasing food. For the overwhelming

14  majority of food shoppers, *key* objectives include *supporting local farmers* (91% of consumers),

15  *supporting companies with good working conditions/fair pay to workers* (89%), *reducing exposure*

16  *to pesticides* (89%), *protecting the environment from chemicals* (88%), *providing better living*

17  *conditions for animals* (84%), and *reducing antibiotic use in food* (82%). Avoiding artificial

18  ingredients (79%; a notable increase from 69% in 2014) and GMOs (75%) are also key objectives

19

20  _____

21  [15] Miles McEvoy, National Organic Program Deputy Administrator, United States Department of

22  Agriculture, Organic 101: Can GMOs Be Used in Organic Products? Available at
    http://blogs.usda.gov/2013/05/17/organic-101-can-gmos-be-used-in-organic-products/

23  [16] National Organic Program—Revisions to Livestock Standards Based on Court Order (Harvey v.

24  Johanns) and 2005 Amendment to the Organic Foods Production Act of 1990 (OFPA), 71 Fed. Reg.
    24,820, 24,823 (Apr. 27, 2006).

25  [17] *Id.*

26  [18] Clive James, *Global Status of Commercialized Biotech/GM Crops: 2012*, Int. Ser. For the

27  Acquisition of Agri-Biotech Applications, *available at*
    http://www.isaaa.org/resources/publications/briefs/44/download/isaaa-brief-44-2012.pdf

28

CLASS ACTION COMPLAINT

for many."[19]

45.     Defendant's packaging of the Products demonstrates its intent to convince consumers that said Products are "natural."

46.     By claiming the Products are "natural" Defendant deceives and misleads reasonable consumers.

47.     Indeed, reasonable consumers, including Plaintiff, purchase the Products based upon the belief that they are "natural." A reasonable consumer would not deem the Products "natural" if they knew the Products contain non-natural ingredients.

48.     Reasonable consumers believe that foods labeled as "natural" or "all natural" do not contain GMOs.

49.     The above-referenced 2015 survey by Consumer Reports National Research Center found that a majority of United States consumers think the "natural" label on packaged and processed foods means that no GMOs were used.[20]

50.     The same survey revealed that a majority of consumers think the "organic" label on packaged and processed foods means no GMOs were used,[21] which is important because "[t]here is significant confusion in consumers' minds about the differences between the term 'organic' and 'natural.'"[22] Similarly, reasonable consumers believe that if a cow consumes GMO corn or soy, or if it is given rbST, its end products, including cheese, are not "natural."

51.     Because the Products contain GMOs, Defendant deceives and misleads reasonable consumers, including Plaintiff and the Class members, by marketing, advertising and labeling them as "natural".

---

[19] CONSUMER REPORTS NAT'L RESEARCH CTR., NATURAL FOOD LABELS SURVEY 6 (2015), *available at* http://goo.gl/SGTvVx.

[20] CONSUMER REPORTS NAT'L RESEARCH CTR., NATURAL FOOD LABELS SURVEY 6 (2015), *available at* http://goo.gl/SGTvVx.

[21] *Id.*

[22] ORGANIC & NATURAL HEALTH ASS'N, CONSUMER INSIGHTS ON ORGANIC AND NATURAL 3 (2015), *available at* http://goo.gl/RyfFT5.

CLASS ACTION COMPLAINT

1  **Plaintiff and the Class Members Reasonably Relied on Defendant's Misrepresentations**

2      52.    Consumers rely on food label representations and information in making purchasing

3  decisions.

4      53.    Defendant's marketing of the Products as "natural" in a prominent location on the

5  labels of all of the Products throughout the Class Period evinces Defendant's awareness that

6  "Natural" claims are material to consumers.

7      54.    Defendant's deceptive representations and omissions are material in that a reasonable

8  person would attach importance to such information and would be induced to act upon such

9  information in making purchasing decisions.

10     55.    Plaintiff and the Class members reasonably relied to their detriment on Defendant's

11 misleading representations and omissions.

12     56.    Defendant's false, misleading, and deceptive misrepresentations and omissions are

13 likely to continue to deceive and mislead reasonable consumers and the general public, as they have

14 already deceived and misled Plaintiff and the Class members.

15  **Defendant's Wrongful Conduct Caused Plaintiff's and the Class Members' Injuries**

16     57.    As an immediate, direct, and proximate result of Defendant's false, misleading, and

17 deceptive representations and omissions, Plaintiff and the Class members suffer injuries in that they:

18          a.    pay a sum of money for Products that are not what Defendant
19                represents;

20          b.    pay a premium price for Products that are not what Defendant
21                represents;

22          c.    are deprived of the benefit of the bargain because the Products they
                  purchase are different from what Defendant warrants;
23
24          d.    are deprived of the benefit of the bargain because the Products they
                  purchase have less value than what Defendant represents;
25
26          e.    do not receive Products that measured up to their expectations, which
                  Defendant creates;

27          f.    ingest a substance that is of a different quality than what Defendant
28                promises; and

CLASS ACTION COMPLAINT

1
2

      g.    are denied the benefit of the beneficial properties of the natural foods Defendant promises.

3
4
5
6

58.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not be willing to pay the same amount for the Products, and, consequently, Plaintiff and the Class members would not be willing to purchase the Products.

7
8
9

59.    Plaintiff and the Class members pay for Products that are "natural" but receive Products that are not "natural." The Products that Plaintiff and the Class members receive are worth less than the Products for which they pay.

10
11
12

60.    Based on Defendant's false, misleading and deceptive representations and omissions, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "natural" label.

13
14
15

61.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knows and intends that consumers will pay a premium for products that are labeled "natural" over comparable products not so labeled.

16
17
18
19
20
21

62.    Plaintiff and the Class members all pay money for the Products. However, Plaintiff and the Class members do not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchase, purchase more of, and/or pay more for, the Products than they would if they knew the truth about the Products. Consequently, Plaintiff and the Class members suffer injury in fact and lose money as a result of Defendant's wrongful conduct.

22

## CLASS ALLEGATIONS

23
24

63.    Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and the following proposed classes (collectively, "the Class"):

25
26
27
28

      a.    The "California Class" which consists of: All consumers within the State of California who purchased the Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the California Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant, and the judicial officer to whom this lawsuit is assigned.

CLASS ACTION COMPLAINT

b.    The "Nationwide Class" which consists of: All consumers within the United States who purchased the Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the Nationwide Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant, and the judicial officer to whom this lawsuit is assigned.

c.    The "Multi-State Class," which consists of: All consumers in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, or Wyoming who purchased the Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the Multi-State Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

64.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

65.    <u>Numerosity; Rule 23(a)(1)</u>: The size of the Class is so large that joinder of all Class members is impracticable. Due to the nature and expanse of Defendant's business, Plaintiff believes there are thousands, if not hundreds of thousands, of Class members geographically dispersed throughout the United States.

66.    <u>Existence and Predominance of Common Questions of Law and Fact; Rule 23(a)(2), (b)(3)</u>: There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual Class members.

67.    All Class members were exposed to Defendant's deceptive and misleading advertising and marketing claims that the Products were "natural" because those claims were on the packaging of each and every Product.

CLASS ACTION COMPLAINT

68.   Additional common legal and factual questions include but are not limited to:

a.   whether Defendant misrepresented to the class members that the Products are "natural";

b.   whether Defendant's misrepresentations and omissions are material to reasonable consumers;

c.   whether Defendant's labeling, marketing, and sale of the Products constitutes unfair and/or deceptive business practices;

d.   whether Defendant's conduct described above constitutes a breach of warranty;

e.   whether Plaintiff and the Class members are entitled to actual, statutory, or other forms of damages and other monetary relief; and

f.   whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

69.   Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

70.   <u>Typicality; Rule 23(a)(3)</u>: Plaintiff's claims are typical of the Class because Defendant injured all Class members through the uniform misconduct described herein; all Class members were subject to Defendant's false, misleading, and unfair advertising and marketing practices and representations, including the false and misleading claim that the Products are "natural"; and Plaintiff seeks the same relief as the Class members.

71.   There are no defenses available to Defendant that are unique to Plaintiff.

72.   <u>Adequacy of Representation; Rule 23(a)(4)</u>: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with those of the Class members. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant. Further, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

CLASS ACTION COMPLAINT

73.    <u>Injunctive or Declaratory Relief; Rule 23(b)(2)</u>: The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

74.    <u>Superiority; Rule 23(b)(3)</u>: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

a.    The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

b.    It would be virtually impossible for the individual Class members to effectively redress the wrongs done to them. Even if the Class members could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

c.    The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant.

d.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

75.    **Notice** – Plaintiff and Plaintiff's counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

CLASS ACTION COMPLAINT

1

**CLAIMS FOR RELIEF**

2

**FIRST CLAIM FOR RELIEF**

3

**Violation of the Consumers Legal Remedies Act, Cal Civ Code § 1750 *et seq.***
**On Behalf of the California Class**

4

76.     Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

5

77.     Plaintiff brings this claim for violation of the Consumers Legal Remedies Act, Cal

6

Civ Code § 1750 *et seq.* ("CLRA"), on behalf of the California Class.

7

78.     Under the CLRA, "goods" means "tangible chattels bought or leased for use primarily

8

for personal, family, or household purposes[.]" Cal Civ. Code § 1761(a).

9

79.     The Products are "goods" under Cal Civ. Code § 1761(a).

10

80.     Under the CLRA, "consumer" means "an individual who seeks or acquires, by

11

purchase or lease, any goods or services for personal, family, or household purposes." Cal Civ. Code

12

§1761(d).

13

81.     Plaintiff and the California Class members are "consumers" under Cal Civ. Code

14

§section 1761(d).

15

82.     Under the CLRA, "person" means "an individual, partnership, corporation, limited

16

liability company, association, or other group, however organized." Cal Civ. Code § 1761(c).

17

83.     Defendant is a "person" under Cal Civ. Code § 1761(c).

18

84.     Under the CLRA, "transaction" means "an agreement between a consumer and

19

another person, whether or not the agreement is a contract enforceable by action, and includes the

20

making of, and the performance pursuant to, that agreement." Cal Civ. Code § 1761(e).

21

85.     Defendant, on the one hand, and Plaintiff and the California Class members, on the

22

other hand, engaged in "transactions" as the CLRA defines that term because, among other reasons,

23

Defendant agreed to sell, and pursuant to that agreement sold, the Products to Plaintiff and the

24

California Class members.

25

86.     Defendant's actions, representations, and conduct have violated, and continue to

26

violate, the CLRA because they extend to transactions that are intended to result, or that have

27

resulted, in the sale of goods to consumers.

28

87.     Under section 1770(a) of the CLRA:

CLASS ACTION COMPLAINT

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

\* \* \* \* \*

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

\* \* \* \* \*

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

\* \* \* \* \*

(9) Advertising goods or services with intent not to sell them as advertised.

\* \* \* \* \*

(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

88.     As alleged above, Defendant has violated, and continues to violate, Cal Civ. Code § 1770(a)(5) by representing the Products have characteristics, uses, benefits, and qualities which they do not. Specifically, Defendant represents the Products are "natural," when, in fact, the Products contain non-natural ingredients.

89.     As alleged above, Defendant has violated, and continues to violate, Cal Civ. Code § 1770(a)(7) by representing the Products are of a particular quality when they are of another. Specifically, Defendant represent that the Products are "natural," when, in fact, the Products contain non-natural ingredients.

90.     As alleged above, Defendant has violated, and continues to violate, Cal Civ. Code § 1770(a)(9) by advertising the Products as "natural" with the intent to sell Products that are not

CLASS ACTION COMPLAINT

1   actually "natural."

2       91.    As alleged above, Defendant has violated, and continues to violate, Cal Civ. Code §

3   1770(a)(16) by representing that the Products it sold to Plaintiff and the California Class members

4   are "natural," when, in fact, the Products are not.

5       92.    Defendant violates the CLRA by representing through its marketing, advertising and

6   labeling that the Products are "natural" when it knows, or should know, that the representations are

7   unsubstantiated, false, and misleading.

8       93.    Plaintiff and the California Class members believe Defendant's representations that

9   the Products are "natural." Plaintiff and the California Class members would not purchase the

10  Products, but for Defendant's misleading statements about the Products being "natural."

11      94.    Plaintiff and the California Class members are injured in fact and lose money as a

12  result of Defendant's conduct of improperly describing the Products as "natural." Plaintiff and the

13  California Class members pay for "natural" Products but do not receive such Products, since the

14  Products contain non-natural ingredients.

15      95.    CLRA SECTION 1782 NOTICE. On January 13, 2017, Plaintiff, through counsel,

16  sent a CLRA demand letter to Defendant that provided notice of Defendant's violation of the CLRA

17  and demanded that Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false,

18  and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do

19  so, Plaintiff would file a complaint seeking damages in accordance with the CLRA. Defendant failed

20  to comply with the letter. For the foregoing reasons, pursuant to Cal Civ Code § 1780(a)(3),

21  Plaintiff, individually and on behalf of all other members of the California Class, seeks

22  compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's

23  acts and practices.

24      96.    Pursuant to Cal Civ Code §§ 1780 and 1782, Plaintiff and the California Class

25  members seek damages in an amount to be proven at trial, an injunction to bar Defendant from

26  continuing its deceptive advertising practices, and reasonable attorneys' fees and costs.

27      97.    THEREFORE, Plaintiff prays for relief as set forth below.

28

CLASS ACTION COMPLAINT

1

2

**SECOND CLAIM FOR RELIEF**
**Violation of the False Advertising Law, Cal Bus & Prof Code § 17500 *et seq.***
**On Behalf of the California Class**

3      98.    Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

4      99.    Plaintiff brings this claim for violation of the False Advertising Law, Bus & Prof

5    Code § 17500 *et seq.* ("FAL"), on behalf of the California Class.

6      100.   The FAL makes it unlawful for a person, firm, corporation, or association to induce

7    the public to buy its products by knowingly disseminating untrue or misleading statements about the

8    products.

9      101.   At all relevant times, Defendant has engaged, and continue to engage, in a public

10   advertising and marketing campaign representing that the Products are "natural."

11     102.   As set forth previously, however, the Products contain non-natural ingredients.

12   Defendant's advertisements and marketing representations are, therefore false, misleading, untrue,

13   and likely to deceive reasonable consumers.

14     103.   Defendant engaged in its advertising and marketing campaign with intent to directly

15   induce consumers, including Plaintiff and the California Class members, to purchase the Products

16   based on false and misleading claims.

17     104.   In making and disseminating the statements alleged herein, Defendant knew or should

18   have known the statements are untrue or misleading.

19     105.   Plaintiff and the California Class members believed Defendant's representations that

20   the Products are "natural." Plaintiff and the California Class members would not purchase the

21   Products if they knew the Products contain non-natural ingredients.

22     106.   Plaintiff and the California Class members are injured in fact and lose money as a

23   result of Defendant's conduct of improperly describing the Products as "natural." Plaintiff and the

24   California Class members pay for Products that are "natural," but do not receive such Products.

25     107.   The Products Plaintiff and the California Class members receive are worth less than

26   the Products for which they pay. Plaintiff and the California Class members pay a premium price on

27   account of Defendant's misrepresentations that the Products are "natural."

28     108.   Plaintiff and the California Class members seek declaratory relief, restitution for

CLASS ACTION COMPLAINT

1   monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief

2   enjoining Defendant from continuing to disseminate its untrue and misleading statements, and other

3   relief allowable under Bus & Prof Code § 17535.

4       109.    THEREFORE, Plaintiff prays for relief as set forth below.

5                              **THIRD CLAIM FOR RELIEF**

        **Violation of the Unfair Competition Law, Cal Bus & Prof Code § 17200 *et seq.***

6                          **On Behalf of the California Class**

7       110.    Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

8       111.    Plaintiff brings this claim for violation of the Unfair Competition Law, Bus & Prof

9   Code § 17200 *et seq.* ("UCL"), on behalf of the California Class.

10      112.    The circumstances giving rise to Plaintiff's and the California Class members'

11  allegations include Defendant's corporate policies regarding the sale and marketing of the Products.

12      113.    Under the UCL, "unfair competition" means and includes "any unlawful, unfair or

13  fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

14  act prohibited by" the FAL. BUS. & PROF. CODE § 17200.

15      114.    By engaging in the acts and practices described herein, Defendant commits one or

16  more acts of "unfair competition" as the UCL defines the term.

17      115.    Defendant committed, and continue to commit, "unlawful" business acts or practices

18  by, among other things, violating the CLRA, the FAL, and California common law, as described

19  herein.

20      116.    Defendant committed, and continue to commit, "unfair" business acts or practices by,

21  among other things:

22          a.   engaging in conduct for which the utility of the conduct, if any, is
                 outweighed by the gravity of the consequences to Plaintiff and the members
23               of the California Class;

24          b.   engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or
25               substantially injurious to Plaintiff and the members of the California Class;
                 and
26

27          c.   engaging in conduct that undermines or violates the spirit or intent of the
                 consumer protection laws that this Class Action Complaint invokes.
28

                              CLASS ACTION COMPLAINT

117.     Defendant commits unlawful, unfair, and/or fraudulent business acts or practices by, among other things, engaging in conduct Defendant knew or should have known was likely to and does deceive reasonable consumers, including Plaintiff and the California Class members.

118.     As detailed above, Defendant's unlawful, unfair, and/or fraudulent practices include making false and/or misleading representations that the Products are "natural."

119.     Plaintiff and the California Class members believed Defendant's representations that the Products are "natural." Plaintiff and the California Class members would not purchase the Products, but for Defendant's misleading statements that the Products are "natural."

120.     Plaintiff and the California Class members are injured in fact and lose money as a result of Defendant's conduct of improperly describing the Products as "natural." Plaintiff and the California Class members pay for Products that are "natural," but do not receive Products that are "natural." Instead, Plaintiff and the California Class members receive Products that contain non-natural ingredients.

121.     Plaintiff and the California Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, and other relief allowable under Cal Bus & Prof Code §17203, including but not limited to enjoining Defendant from continuing to engage in its unfair, unlawful, and/or fraudulent conduct alleged herein.

122.     THEREFORE, Plaintiff prays for relief as set forth below.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Express Warranty – By the Multi-State Class)**

123.     Plaintiff incorporates by reference the allegations set forth above.

124.     Plaintiff and the Multi-State Class members formed a contract with Defendant at the time they purchased the Products. As part of that contract, Defendant represents that the Products are "natural," as described above. These representations constitute express warranties and became part of the basis of the bargain between Plaintiff and the Multi-State Class members, on the one hand, and Defendant, on the other.

125.     Defendant made the above-described representations to induce Plaintiff and the

CLASS ACTION COMPLAINT

1   Multi-State Class members to purchase the Products, and Plaintiff and the Multi-State Class
2   members relied on the representations in purchasing the Products.

3       126.    All conditions precedent to Defendant's liability under the above-referenced contract
4   have been performed by Plaintiff and the other Multi-State Class members.

5       127.    Defendant breached the express warranties about the Products because, as alleged
6   above, the Products are not "natural." Defendant breached the following state warranty laws:

7           A.      Alaska Stat. section 45.02.313;

8           B.      A.R.S. section 47-2313;

9           C.      A.C.A. section 4-2-313;

10          D.      Cal. Comm. Code section 2313;

11          E.      Colo. Rev. Stat. section 4-2-313;

12          F.      Conn. Gen. Stat. section 42a-2-313;

13          G.      6 Del. C. section 2-313;

14          H.      D.C. Code section 28:2-313;

15          I.      O.C.G.A. section 11-2-313;

16          J.      HRS section 490:2-313;

17          K.      Idaho Code section 28-2-313;

18          L.      810 ILCS 5/2-313;

19          M.      Ind. Code section 26-1-2-313;

20          N.      K.S.A. section 84-2-313;

21          O.      KRS section 355.2-313;

22          P.      11 M.R.S. section 2-313;

23          Q.      Mass. Gen. Laws Ann. ch. 106 section 2-313;

24          R.      Minn. Stat. section 336.2-313;

25          S.      Miss. Code Ann. section 75-2-313;

26          T.      R.S. Mo. Section 400.2-313;

27          U.      Mont. Code Anno. Section 30-2-313;

28          V.      Neb. Rev. Stat. section 2-313;

CLASS ACTION COMPLAINT

1       W.     Nev. Rev. Stat. Ann. section 104.2313;

2       X.     RSA 382-A:2-313;

3       Y.     N.J. Stat. Ann. section 12A:2-313;

4       Z.     N.M. Stat. Ann. section 55-2-313;

5       AA.    N.Y. U.C.C. Law section 2-313;

6       AB.    N.C. Gen. Stat. section 25-2-313;

7       AC.    N.D. Cent. Code section 41-02-30;

8       AD.    ORC Ann. section 1302.26;

9       AE.    12A Okl. St. section 2-313;

10      AF.    Or. Rev. Stat. section 72-3130;

11      AG.    13 Pa.C.S. section 2313;

12      AH.    R.I. Gen. Laws section 6A-2-313;

13      AI.    S.C. Code Ann. section 36-2-313;

14      AJ.    S.D. Codified Laws, section 57A-2-313;

15      AK.    Tenn. Code Ann. section 47-2-313;

16      AL.    Tex. Bus. & Com. Code section 2.313;

17      AM.   Utah Code Ann. section 70A-2-313;

18      AN.    9A V.S.A. section 2-313;

19      AO.    Va. Code Ann. section 59.1-504.2;

20      AP.    Wash. Rev. Code Ann. section 62A.2-313;

21      AQ.    W. Va. Code section 46-2-313;

22      AR.    Wyo. Stat. section 34.1-2-313.

23      128.   As a result of Defendant's breaches of express warranty, Plaintiff and the other

24  members of the Multi-State Class were damaged in the amount of the premium price they paid for

25  the Products, in amounts to be proven at trial.

26      129.   On January 13, 2017, a reasonable time after he knew or should have known of such

27  breach, Plaintiff, on behalf of herself and the other members of the Multi-State Class, sent a notice

28  letter to Defendant which provided notice of Defendant's breach and demanded that it correct,

CLASS ACTION COMPLAINT

repair, replace, or otherwise rectify the breach complained of herein. The letter also stated that if Defendant refused to do so, a complaint would be filed seeking damages. Defendant failed to comply with the letter.

130.    THEREFORE, Plaintiff prays for relief as set forth below.

## FIFTH CLAIM FOR RELIEF
### Intentional Misrepresentation and Fraud under the Common Law
### (On Behalf of the Class)

131.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

132.    Plaintiff brings this claim for relief on behalf of the Class for intentional misrepresentation and fraud under the common law.

133.    Defendant has intentionally misrepresented a material fact about the Products by advertising, marketing, distributing, and/or selling the Products to Plaintiff and the Class members with claims that they are "natural."

134.    At the time Defendant made the misrepresentations herein alleged, Defendant knew the products were not "natural" because they contained synthetic pesticides.

135.    Defendant misrepresented the Products as "natural" with the purpose of inducing Plaintiff and the Class members to rely on its misrepresentations and inducing Plaintiff and the Class members to purchase the Products.

136.    Plaintiffs and the Class members reasonably relied on Defendant's representations that the Products were "natural" and, in reasonable reliance thereon, purchased the Products.

137.    Plaintiff and the Class members were ignorant as to the falsity of Defendant's "natural" misrepresentations and would not have purchased the Products had they known the Products were not "natural."

138.    Plaintiff and the Class members were injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as "natural." Plaintiff and the Class members paid for Products that were "natural," but did not receive such Products.

139.    The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

CLASS ACTION COMPLAINT

140.     Therefore, Plaintiff prays for relief as set forth below.

## SIXTH CLAIM FOR RELIEF
**Violation of the Florida Deceptive and Unfair Trade Practices Act,
Fla. Stat. § 501.201 *et seq.*
On Behalf of the Nationwide Class**

141.     Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

142.     Plaintiff brings this claim on behalf of herself and on behalf of the other members of the Nationwide Class, pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* (the "FDUTPA").

143.     Section 501.204(1) of the FDUTPA makes "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct or any trade or commerce" unlawful.

144.     By labeling, advertising, marketing, distributing, and/or selling the Products with claims that they were "natural" to Plaintiff and the Nationwide Class members, Defendant violated the FDUTPA by engaging in, and it continues to violate the FDUTPA by continuing to engage in, unfair or deceptive acts or practices, by falsely and misleadingly describing the composition of the Products.

145.     Had Plaintiff and the Nationwide Class members known the Products were not "natural," because they contained non-natural ingredients, they would not have purchased the Products and/or paid a premium price for the Products, as detailed herein.

146.     In addition, the practice employed by Defendant, whereby Defendant sold, promoted and marketed that its products are "natural" when they are not constitutes a *per se* violation of FDUTPA under Section 501.203(3)(c) because it is in violation of the Florida Food Safety Act, Fla. Stat. § 500.04 (1) and (2) in that said products are misbranded.

147.     Defendant's false, unlawful, and misleading product descriptions render its products misbranded under Florida law. Specifically, Section 500.04 of the Florida Food Safety Act prohibits the manufacture, sale or delivery of food that is "misbranded." Food is "misbranded" when "its labeling is false or misleading in any particular." Fla. Stat. § 500.11(1)(a). A food is considered mislabeled unless the proper disclosures are made "on the outside container or wrapper" on the

CLASS ACTION COMPLAINT

1  product. § 500.03(1)(t). Misbranded products cannot be legally sold and are legally worthless.

2  148.   Plaintiff and the Nationwide Class members were injured in fact and lost money as a

3  result of Defendant's conduct of improperly describing the Products as "natural," Plaintiff and the

4  Nationwide Class members paid for Products that were "natural," but did not receive such Products.

5  149.   The Products Plaintiff and the Nationwide Class members received were worth less

6  than the Products for which they paid.

7  150.   Plaintiff and the other Nationwide Class members seek to enjoin such unlawful acts

8  and practices described above.  Each of the Nationwide Class members will be irreparably harmed

9  unless the unlawful actions of Defendant are enjoined in that they will continue to be unable to rely

10  on the Defendant's representations that the Products are "Natural".

11  151.   Plaintiff and the Nationwide Class members seek declaratory relief, injunctive relief

12  prohibiting Defendant from continuing to disseminate its false and misleading statements, actual

13  damages plus attorney's fees and court costs, and other relief allowable under the FDUTPA.

14  Therefore, Plaintiff prays for relief as set forth below.

15  **SEVENTH CLAIM FOR RELIEF**
**Unjust Enrichment under Florida Common Law**
16  **On Behalf of the Nationwide Class in the Alternative**

17  152.   Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

18  153.   Plaintiff asserts this claim in the alternative to the above-listed claims.

19  154.   Plaintiff, on behalf of herself and consumers nationwide, brings a common law claim

20  for unjust enrichment.

21  155.   Defendant's conduct violates, *inter alia*, state and federal law by manufacturing,

22  advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

23  156.   Defendant's unlawful conduct, as described in this Complaint, allows Defendant to

24  knowingly realize substantial revenues from selling its Products at the expense of, and to the

25  detriment or impoverishment of, Plaintiff and Nationwide Class members, and to Defendant's

26  benefit and enrichment.  Defendant thereby violates fundamental principles of justice, equity, and

27  good conscience.

28  157.   Plaintiff and Nationwide Class members confer significant financial benefits and pay

CLASS ACTION COMPLAINT

1  substantial compensation to Defendant for the Products, which are not as Defendant represents them
2  to be.

3       158.   Under Florida's common law principles of unjust enrichment, it is inequitable for
4  Defendant to retain the benefits conferred by Plaintiff's and Nationwide Class members'
5  overpayments.

6       159.   Plaintiff and Nationwide Class members seek disgorgement of all profits resulting
7  from such overpayments and establishment of a constructive trust from which Plaintiff and
8  Nationwide Class members may seek restitution.

9                          **PRAYER FOR RELIEF**

10      WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for
11 judgment against Defendant as follows:

12      A.     For an order enjoining Defendant from continuing the unlawful practices set forth
13 above;

14      B.     For an order requiring Defendant to disgorge and make restitution of all monies
15 Defendant acquired by means of the unlawful practices set forth above;

16      C.     For compensatory damages according to proof;

17      D.     For punitive damages according to proof;

18      E.     For reasonable attorneys' fees and costs of suit;

19      F.     For declaratory relief;

20      G.     For pre-judgment interest; and

21      H.     For such other relief as the Court deems proper.

22
23
24
25
26
27
28

                        CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all claims so triable.

DATE: August 25, 2017                  Respectfully submitted,

                                       **REESE LLP**

                                       By: */s/ Michael R. Reese*
                                       Michael R. Reese (State Bar No. 206773)
                                       *mreese@reesellp.com*
                                       100 West 93rd Street, 16th Floor
                                       New York, New York 10025
                                       Telephone: (212) 643-0500
                                       Facsimile: (212) 253-4272

                                       **HALUNEN LAW**
                                       Melissa S. Weiner (*pro hac vice* to be filed)
                                       *weiner@halunenlaw.com*
                                       Christopher J. Moreland (*pro have vice* to be filed)
                                       *moreland@halunenlaw.com*
                                       1650 IDS Center
                                       80 South Eighth Street
                                       Minneapolis, Minnesota 55402
                                       Telephone: (612) 605-4098
                                       Facsimile: (612) 605-4099

                                       *Counsel for Plaintiff*
                                       *and the Proposed Class*

CLASS ACTION COMPLAINT

# Exhibit 1



# Exhibit 2



# Exhibit 3



# Exhibit 4



# Exhibit 5



# Exhibit 6



# Exhibit 7



# Exhibit 8



# Exhibit 9



# Exhibit 10



# Exhibit 11



# Exhibit 12



# Exhibit 13



# Exhibit 14



# Exhibit 15



# Exhibit 16



# Exhibit 17



# Exhibit 18



# Exhibit 19



# Exhibit 20

